# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**BRITTANY PHILLIPS SIMS,**
individually and on behalf of all others
similarly situated individuals,

Plaintiff,

v.

**KAISER FOUNDATION HEALTH PLAN OF GEORGIA, INC.**, a Georgia corporation,

Defendant.

Civil Action File No.

JURY TRIAL DEMANDED

## COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiff, Brittany Phillips Sims ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Kaiser Foundation Health Plan of Georgia, Inc. ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA," or 29 U.S.C. § 201 *et seq.*

2.    Defendant offers call center services to its patients and employs Customer Service and Support Representatives (hereinafter "CSRs") to receive and respond to patient phone calls, among other duties.

3.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.

4.    One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.*

5.    More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/ representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

6.    Defendant employs CSRs in a brick-and-mortar call center facility located in Duluth, Georgia. Upon information and belief, Defendant also employs

"remote" CSRs who work out of their home residences and who perform the same job duties and are subjected to the same legal violations as Defendant's brick-and-mortar CSRs.

7.     Defendant requires its CSRs to work a full-time schedule, plus overtime. However, Defendant does not compensate the CSRs for all work performed. Specifically, Defendant fails to pay CSRs for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift. Defendant's illegal compensation practices and policies result in CSRs not being paid for all time worked, including overtime.

8.     Defendant requires CSRs to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the CSRs' work, as they cannot perform their jobs effectively without them.

9.     Defendant's CSRs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

10.     Pursuant to Defendant's illegal compensation practices and policies, CSRs are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking into Defendant's timekeeping system; 2)

perform computer, program and application shutdown and log-in tasks off-the-clock during their uncompensated meal periods; and, 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping system.

11.    The individuals Plaintiff seeks to represent in this action are current and former CSRs, who are similarly situated to herself in terms of having been subjected to Defendant's violations of federal and state law.

12.    Defendant knew or could have easily determined how long it takes for its CSRs to complete the above described off-the-clock work, and Defendant could have properly compensated Plaintiff and the putative Class for this work, but did not.

13.    Plaintiff seeks a declaration that her rights and the rights of the putative Class were violated, an award of unpaid wages (including overtime), an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and award of attorneys' fees and costs to make herself and the putative Class whole for the damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## **JURISDICTION**

14.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim

pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

15.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

16.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees, including the Plaintiff in this case, engage in interstate commerce or in the production of goods for commerce and, therefore, they are also covered by the FLSA on an individual basis.

17.     This Court has original jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which at least some members of the proposed class have a different citizenship from Defendant.

18.     The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the state law claims and the federal claim are

so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

19.    The court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

20.    The court has personal jurisdiction over Defendant because Defendant is domiciled in the State of Georgia, conducts business within the State of Georgia, employs individuals within the State of Georgia, and is registered with the Georgia Department of the Secretary of State.

## VENUE

21.    Venue is proper in the Northern District of Georgia because Defendant employs CSRs in this district, and a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in the Northern District of Georgia.

## PARTIES

22.    Plaintiff, Brittany Phillips Sims, is a resident of Riverdale, Georgia. She was employed by Defendant as a CSR from November 2016 through May 2018 and signed a consent form to join this collective action lawsuit, which is attached hereto as *Exhibit A*.

23.    Additional individuals were or are employed by Defendant as CSRs

during the past three years and their consent forms will also be filed in this case.

24.    Defendant, Kaiser Foundation Health Plan of Georgia, Inc., is a Georgia corporation, with its principal place of business at 3495 Piedmont Road, 9 Piedmont Center, Atlanta, Georgia 30305, and its registered agent for service of process in Corporation Service Company.

25.    Upon information and belief, Defendant has employed hundreds (100s) of CSRs in Georgia and elsewhere over the last four years.

26.    Plaintiff is informed and believes, and alleges thereon, that Defendant is responsible for the circumstances alleged herein, and proximately caused Plaintiff and similarly situated CSRs to be subject to the fraudulent, unlawful, unfair, and deceptive acts and practices complained of herein.

27.    At all times herein mentioned, Defendant approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

28.    At all times herein mentioned, Defendant's acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## GENERAL ALLEGATIONS

29.    Plaintiff, Brittany Phillips Sims, was employed as a CSR for Defendant and worked from November 2016 through May 2018.  Plaintiff was compensated at

a base rate of $21.34 per hour.  She typically worked 40 or more hours per week (and more than 8 hours per day).  Plaintiff's typical schedule was Monday through Friday from 10:30 a.m. to 7:00 p.m. in the call center location of Duluth, Georgia.

30.    Plaintiff and Defendant's CSRs are responsible for, among other things, responding to inbound telephone calls from patients and insureds of Defendant to verify monthly premiums and insurance coverage, deductibles and copays; and communicating with physicians.

31.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses, which are prevalent in the industry.

32.    One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

33.    More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/ specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id*.  Additionally, the FLSA requires that "[a]

daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

34.    Defendant employs CSRs in its brick-and-mortar call center facility located Duluth, Georgia. Upon information and belief, Defendant also employs "remote" CSRs who work out of their home residences and who perform the same job duties and are subjected to the same legal violations as Defendant's brick-and-mortar CSRs.

35.    Defendant requires its CSRs to work a full-time schedule, plus overtime. However, Defendant does not compensate the CSRs for all work performed. Specifically, Defendant fails to pay its CSRs for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift. Defendant's illegal compensation practices and policies result in CSRs not being paid for all time worked, including overtime.

36.    Defendant requires its CSRs to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the CSRs' work, as they cannot perform their jobs effectively without them.

37.    Defendant's CSRs perform the same basic job duties and are required

to use the same or similar computer programs, software programs, applications, and phone systems.

38.    Pursuant to Defendant's illegal compensation practices and policies, CSRs are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking into Defendant's timekeeping system; 2) perform computer, program and application shutdown and log-in tasks off-the-clock during their uncompensated meal periods; and, 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping system. Additionally, Defendant fails to pay CSRs for time spent prior to each shift locating equipment (including chairs).

### A.    Pre-Shift Off-the-Clock Work

39.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs are required to start up and log into various secure computer programs, software programs, and applications in order to access information. The pre-shift startup and login process takes substantial time on a daily basis with said time averaging 10 to 15 minutes per day, or even longer when technical issues arise.

40.    Before clocking in when working in Defendant's call center locations, Plaintiff and each CSR must undertake the following essential work tasks in chronological order:

- Clock in at wall or at their desk (this was only for attendance purposes);
- Turn-on/restart the computer;
- Log-in to Cisco phone (if not logged in at wall);
- Log-on to Aspect Portal to check schedules for adherence with lunches and breaks;
- Log into Defendant's members' CRM portal to find members' insurance information;
- Log into ACI to process monthly premiums;
- Log into portal for Obama Care patients to process their payments;
- Log into Foundations, the legacy system for archived and new information;
- Log into KP.org to reset members' passwords for online portals;
- Log into Outlook for emailed messages;
- Log into Wiki for updates, training. and any company policy changes;
- Log into Sametime, Defendants' employee chat for sending and receiving information from team manager; and
- Finally, clock into Defendant's timekeeping system via Cisco. This step would allow the CSR to start taking calls and marks the first time Plaintiff and the other CSRs began getting paid each shift.

41.    Defendant's CSRs complete the above steps before being clocked-in and paid each shift; meaning that they are performing off-the-clock work averaging 10 to 15 minutes per shift without compensation.

42.    Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiff and its other CSRs for no less than an average of 10 to 15 minutes per day of work performed in connection with their pre-shift startup and login activities.

43.    The unpaid off-the-clock work performed prior to each shift by Plaintiff and other CSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**B.    Meal Period Off-the-Clock Work**

44.    Defendant provides Plaintiff and the CSRs with one unpaid meal period per shift.

45.    In order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (Emphasis added).

46.    However, Defendant does not provide Plaintiff and the CSRs with a legitimate bona fide meal period.

47.    Defendant fails to provide a bona fide unpaid meal period because it requires Plaintiff and the CSRs to return to their work stations prior to the end of their meal periods and then to spend off-the-clock time logging back into the

necessary computer/software programs and applications needed to begin taking calls promptly at the end of their scheduled meal periods.

48.    The work performed by Plaintiff and Defendant's CSRs during their unpaid meal periods takes substantial time on a daily basis with said time averaging three (3) minutes or more per day.

### C.    Post-Shift Off-the-Clock Work

49.    Pursuant to Defendant's policies, training and direction, Plaintiff and all other CSRs are required to shut down and logout of certain computer programs and applications they used during their shift *after* they log-out of Defendant's timekeeping system.  The post-shift logout and shutdown process takes substantial time on a daily basis with said time ranging averaging five (5) minutes per shift, but can take substantially longer if the CSR experiences technical problems with the computer/software/ applications or is required to perform program or system updates.

50.    Pursuant to Defendant's policies, training and direction, a substantial portion, if not all, of the shutdown and log-out process occurs after Plaintiff and the CSRs' shifts end and after they clock out of Defendant's timekeeping system.

51.    Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiff and its other CSRs for no less than five (5)

minutes per day of work performed in connection with their end of shift shutdown and log-out activities.

52.    The unpaid off-the-clock work performed subsequent to each shift by Plaintiff and other CSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**D.    Exemplary Pay-Period to Illustrate Pre-, Mid- and Post-Shift Compensation Deficiencies**

53.    Examples of specific workweeks where Defendant failed to pay Plaintiff all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) include the following:

**Pay Period of 6/18/17 to 7/1/2017**

- Plaintiff was paid at a rate of $19.98 per hour for her 80.00 regular hours and $29.98 per hour for .54 overtime hours.

- With unpaid pre-shift, mid-shift and post-shift time, in a range of 18 to 23 minutes per shift, at five shifts per week, Plaintiff should have been paid an additional 180 to 230 minutes at her overtime rate of $29.98 during the pay period.

*Exhibit B*.

**Pay Period of 3/26/17 to 4/8/2017**

- Plaintiff was paid at a rate of $19.98 per hour for her 80.00 regular hours and $29.97 per hour for .81 overtime hours.

- With unpaid pre-shift, mid-shift and post-shift time, in a range of 18 to 23 minutes per shift, at five shifts per week, Plaintiff should have been paid an additional 180 to 230 minutes at her overtime rate of $29.97 during the pay period.

*Exhibit C.*

## E.     Defendant Benefitted from the Uncompensated Off-the-Clock Work

54.     At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiff and similarly situated employees in connection with the above described pre-shift, meal period and post-shift activities performed by Plaintiff and other CSRs.

55.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiff and other CSRs.

56.     At all relevant times, Defendant was able to track the amount of time Plaintiff and the other CSRs spent in connection with the pre-shift, meal period and post-shift activities. However, Defendant failed to do so and failed to compensate Plaintiff and other CSRs for the off-the-clock work they performed.

57.     At all relevant times, Plaintiff and the CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

58.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the CSRs in order to pressure them into performing the pre-shift, meal period and post-shift off-the-clock work.

59.    Defendant expressly trained and instructed Plaintiff and its other CSRs to perform the above-described pre-shift activities before clocking into Defendant's timekeeping system and their shift scheduled start time to ensure they were prepared to take calls at the moment their shifts begin.

60.    At all relevant times, Defendant's policies and practices deprived Plaintiff and the CSRs of wages owed for the pre-shift, meal period, and post-shift activities they performed. Because Defendants' CSRs typically worked forty (40) hours or more in a workweek and/or eight (8) hours or more in a workday, Defendant's policies and practices also deprived them of overtime pay.

61.    Defendant knew or should have known that the time spent by Plaintiff and other CSRs in connection with the pre-shift, meal period and post-shift activities was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

62.    Despite knowing Plaintiff and other CSRs performed work before and after their scheduled shifts and during their meal periods, Defendant failed to make

any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

## FLSA COLLECTIVE ACTION ALLEGATIONS

63.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> ***All similarly situated current and former hourly Customer Support Representatives who work or have worked for Defendant at any time from July 1, 2016 through judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

64.    Defendant is liable under the FLSA for, *inter alia*, failing to compensate Plaintiff and other similarly situated CSRs properly.

65.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

66.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

67.    Defendant has assigned all of the work that Plaintiff and the members of the FLSA Collective have performed, and/or Defendant has been aware of all of the work that Plaintiff and the FLSA Collective have performed.

68.    As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

a.    Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours that they worked in excess of 40 hours per workweek;

b.    Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendant.

69.    Defendant is aware or should have been aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

70.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

71.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

72.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal-period time, and the amount of post-shift log-out/shut-down time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

73.     There are many similarly situated current and former CSRs who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

74.     This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

75.     Those similarly situated employees are known to Defendant, are readily identifiable and can be located through Defendant's records.

76.     Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include several hundreds, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 GEORGIA CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> ***All similarly situated current and former hourly Customer Support Representatives who work or have worked for Defendant in Georgia at any time from July 1, 2013 through judgment.***

(hereinafter referred to as the "Rule 23 Georgia Class"). Plaintiff reserves the right to amend this definition if necessary.

78.    The members of the Rule 23 Georgia Class are so numerous that joinder of all Rule 23 Georgia Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Georgia Class members. Rule 23 Georgia Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

79.    There is a well-defined community of interest among Rule 23 Georgia Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Georgia Class. These common legal and factual questions, include, but are not limited to, the following:

> a.    Whether the pre-shift time Rule 23 Georgia Class members spend on start-up and log-in activities each session is compensable time;

  b. Whether the unpaid time Rule 23 Georgia Class members spend performing work functions during their meal periods is compensable time;

  c. Whether the post-shift time Rule 23 Georgia Class members spend on shutdown and log-out activities is compensable time; and

  d. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract.

80. Plaintiff's claims are typical of those of the Rule 23 Georgia Class in that she and all other Rule 23 Georgia Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Georgia Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Georgia Class members.

81. Plaintiff will fully and adequately protect the interests of the Rule 23 Georgia Class and she retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Georgia Class.

82. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically

infeasible for Rule 23 Georgia Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in other state and federal courts.

83.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

84.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

85.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Georgia Class and declaratory relief is appropriate in this case with respect to the Rule 23 Georgia Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**
**(FLSA Collective Action)**

86.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

87.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

88.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

89.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

90.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

91.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

92.    At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform as much as 23 minutes (or more during shifts when they experienced technical problems) of off-the-clock work per shift, but failed to pay

these employees the federally mandated overtime compensation for the off-the-clock work.

93.     The off-the-clock work performed every shift by Plaintiff and the FLSA Collective is an essential part of their jobs and these activities, and the time associated with these activities is not *de minimis*.

94.     In workweeks where Plaintiff other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including the shift differential where applicable.  29 U.S.C. § 207.

95.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes the CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

96.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## BREACH OF CONTRACT
### (Rule 23 Georgia Class Action)

97.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

98.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Georgia Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Georgia Class members performed on Defendant's behalf.

99.    Defendant's contractual promises to pay Plaintiff and each Rule 23 Georgia Class member's applicable hourly rate is evidenced by, among other things: Defendant's job postings, and each pay stub issued to Plaintiff and the Rule 23 Georgia Class members.

100.    Upon information and belief, each Rule 23 Georgia Class member, including Plaintiff, has an hourly rate of approximately $21.00 per hour.

101.    Plaintiff and every other Rule 23 Georgia Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift, meal period and post-shift activities, described herein.

102.    By not paying Plaintiff and every other Rule 23 Georgia Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Georgia Class.

103.    Plaintiff's and the Rule 23 Georgia Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

104.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and every other member of the Rule 23 Georgia Class has been damaged, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

    a.    An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b.    An Order certifying this action as a class action (for the Rule 23 Georgia Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

    c.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and authorizing Plaintiff to send notice of this

action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.    An Order designating Plaintiff as the representative of the FLSA collective action Class and the Rule 23 Georgia Class; and undersigned counsel as Class counsel for the same;

e.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.    An Order declaring Defendant's violations of the FLSA were willful;

g.    An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Georgia Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

h.    An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23 Georgia Class the full amount of damages and liquidated damages available by law;

i.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j.    An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k.    An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, Brittany Phillips Sims, individually and on behalf of all others

similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

                                                 Respectfully Submitted,

Dated: July 1, 2019                    LEGARE ATTWOOD & WOLFE

                                                 */s/ Steven E. Wolfe*
Steven E. Wolfe
Georgia Bar No. 142441
LEGARE, ATTWOOD & WOLFE, LLC
125 Clairemont Avenue, Suite380
Decatur, Georgia 30030
Tel: (470)823-4000
sewolfe@law-llc.com

Kevin J. Stoops (*pro hac vice* forthcoming)
kstoops@sommerspc.com
Jason T. Thompson (*pro hac vice* forthcoming)
jthompson@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Tel: (248) 355-0300

*Trial Counsel for Plaintiff, Proposed Class, and Collective Members*