**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **BRITTANY PHILLIPS SIMS**, individually and on behalf of all other similarly situated individuals, | ) ) ) | CIVIL ACTION FILE NO. 1:19-cv-03031-JPB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **KAISER FOUNDATION HEALTH PLAN OF GEORGIA, INC.**, a Georgia corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S PRE-DISCOVERY MOTION FOR CONDITIONAL**
**CLASS CERTIFICATION AND COURT-SUPERVISED NOTICE TO**
**POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. §216(b)**

1

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................... iii

I.      INTRODUCTION/SUMMARY .................................................1

II.     RELEVANT FACTS .................................................................2

        A.      THE PARTIES .............................................................2

                1.      Defendant ................................................................2

                2.      Plaintiffs ................................................................3

        B.      DEFENDANT MAINTAINS A POLICY AND
                PRACTICE OF FAILING TO PAY ITS CSRs FOR
                COMPENSABLE OFF-THE-CLOCK WORK..................................3

                1.      Defendant Trains its CSRs to Work Off-the-Clock.................4

                2.      Pre-Shift Work ...........................................................5

                3.      Meal-Period Off-the-Clock Work.............................7

                4.      Post-Shift Work.........................................................8

III.    LAW AND ARGUMENT.........................................................9

        A.      THE FLSA AUTHORIZES COLLECTIVE ACTIONS
                AND   NOTICE   TO   SIMILARLY   SITUATED
                EMPLOYEES ..................................................................9

        B.      THE ELEVENTH CIRCUIT HAS CONSISTENTLY
                APPROVED THE USE OF THE "FAIRLY LENIENT
                STANDARD" WHEN DETERMINING WHETHER TO
                CONDITIONALLY CERTIFY A COLLECTIVE AND
                SEND NOTICE TO EMPLOYEES .................................12

i

1.      Stage One .................................................................12

        (a)     Burden of Proof and Evidence Typically
                Accepted to Meet the "Similarly Situated"
                Standard ......................................................14

        (b)     Remedial Purpose of FLSA ...........................17

        (c)     The Purpose of § 216(b) Notice is to Protect
                Employees' Statute of Limitations ...............19

2.      Stage Two ...............................................................20

C.      THIS COURT SHOULD PROMPTLY AUTHORIZE
        NOTICE TO POTENTIAL OPT-IN PLAINTIFFS .........................21

D.      PLAINTIFFS SHOULD BE PERMITTED TO OBTAIN A
        LIST OF ALL POTENTIAL CLASS MEMBERS AND
        SEND NOTICE ...............................................................22

        1.      Notice via E-mail ................................................22

        2.      Reminder Notice .................................................24

E.      THE COURT SHOULD GRANT A SIXTY (60) DAY
        OPT-IN PERIOD FOR EMPLOYEES TO JOIN THIS
        LITIGATION ..................................................................25

IV.  CONCLUSION..............................................................26

# INDEX OF AUTHORITIES

**Cases**

*Alequin v. Darden Restaurants, Inc.*, 2013 WL 3945919 (S.D. Fla. July 31, 2013) ........................................................................................... 23

*Atkinson v. TeleTech Holdings, Inc.*, 2015 U.S. Dist. LEXIS 23630 (W.D. Ohio February 26, 2015) ......................................................... 23

*Bell v. Mynt Entertainment, LLC*, 223 F.R.D. 680 (S.D. Fla. 2004) .............. 12, 15

*Burrell v. Toppers Int'l, Inc.*, 2016 U.S. Dist. LEXIS 31268 (M.D. Ga. Mar. 11, 2016) ................................................................................... 25

*Cameron-Grant v. Maxim Healthcare Servs. Inc.,* 347 F.3d 1240 (11th Cir. 2003) ........................................................................................ 12

*Carmody v. Fla. Ctr. for Recovery, Inc.*, 2006 U.S. Dist. LEXIS 81640 (S.D. Fla. Nov. 7, 2006) ...................................................................... 15

*Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544 (6th Cir. 2006) ........................... 10

*Cooper v. E. Coast Assemblers, Inc.*, 2013 U.S. Dist. LEXIS 10435 (S.D. Fla. Jan. 25, 2013) ...................................................................... 23

*Deatrick v. Securitas Sec. Servs. USA*, *Inc.*, 2014 WL 5358723 (N.D. Cal. Oct. 20, 2014) ........................................................................ 25

*Dybach v. Florida Dep't of Corrections,* 942 F.2d 1562 (11th Cir. 1991) .......................................................................................... 14

*Fisher v. Michigan Bell Telephone Co.*, 665 F.Supp.2d 819 (E.D. Mich. 2009) ........................................................................................ 12

*Florence v. Deli Mgmt., Inc.*, 2019 WL 964316 (N.D. Ga. Jan. 10, 2019) ........................................................................................... 25

*Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418 (M.D. Ala. 1991) .................................................................................... 18

*Grayson v. Kmart Corp*, 79 F.3d 1086 (11th Cir. 1996) ........................... 14, 15, 19

*Hargrove v. Ryla Teleservs., Inc.*, 2012 WL 463442 (E.D. Va. Feb. 13, 2012) ...................................................................................... 25

*Hill v. Muscogee County Sch. Dist.,* 2005 WL 3526669 (M.D. Ga.) .................... 16

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001) ............. passim

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) ................................. 11

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)....................... 10, 11, 20

*Ide v. Neighborhood Rest. Partners, LLC*, Case No. 13-cv-509 (N.D. Ga.).................................................................................... 13

*Jackson v. New York Tel. Co.*, 163 F.R.D. 429 (S.D.N.Y. 1995).............. 12, 13, 18

*Jennings v. Cellco P'ship*, 2012 WL 2568146 (D. Minn. July 2, 2012) .............. 25

*Jewell v. Aaron's, Inc.*, 2012 U.S. Dist. LEXIS 92285 (N.D. Ga. June 28, 2012) .................................................................................. 15, 16

*Kiley v. MedFirst Consulting Healthcare Staffing, LLC*, 297 F. Supp. 3d 1260 (N.D. Ala. 2018) ..................................................................... 23

*Kreher v. City of Atlanta, Ga.,* 2006 U.S. Dist. LEXIS (N.D. Ga. Mar. 20, 2006) ...................................................................... 13, 14, 17, 19

*LaFleur v. Dollar Tree Stores, Inc.*, 2012 U.S. Dist. LEXIS (E.D. Va. Oct. 2, 2012) ............................................................................. 20

*Lusardi v. Xerox Copy*, 118 F.R.D. 351 (D.N.J. 1987) ......................................... 12

*Miller v. FleetCor Techs. Operating Co., LLC.*, 2014 WL 12543337 (N.D. Ga. Apr. 8, 2014) ................................................................. 25

iv

*Mooney v. Aramco Servs. Co*, 54 F.3d 1207 (5th Cir. 1995)................................. 11

*Morgan v. Family Dollar Stores, Inc.* 551 F.3d 1233 (11th Cir. 2008) .......... passim

*Palma v. Metropcs Wireless, Inc.*, 2014 WL 235478 (M.D. Fla. Jan. 22, 2014) ............................................................................................. 23

*Phelps v. MC Commc'ns, Inc.*, 2011 U.S. Dist. LEXIS 84428 (D. Nev. Aug. 1, 2011) ............................................................................................. 24

*Reece v. United Home Care of N. Atlanta, Inc.*, 2013 U.S. Dist. LEXIS 31995 (N.D. Ga. Mar. 7, 2013)........................................................... 13

*Ross v. Jack Rabbit Servs., Inc.*, 2014 U.S. Dist. LEXIS 72550 (W.D. Ky. May 29, 2014)..................................................................................... 24

*Scott v. Heartland Home Finance*, 2006 U.S. Dist. LEXIS (N.D. Ga. May 3, 2006)................................................................................... 13, 16

*Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392 (D.N.J. 1988), *aff'd*, 862 F.2d 439 (2d Cir.), *aff'd*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)................................................................ 10, 19

*Stelmachers v. Maxim Healthcare Servs.*, 2013 U.S. Dist. LEXIS 189876 (N.D. Ga. Aug. 5, 2013) ......................................................... 13

*Stevenson v. Great Am. Dream, Inc.*, 2013 WL 4217128 (N.D. Ga. Aug. 14, 2013) ............................................................................... 25

*Stuven v. Texas De Brazil (Tampa) Corp.*, 2013 U.S. Dist. LEXIS 22240 (M.D. Fla. Feb. 19, 2013) ......................................................... 23

*Weinstein v. 440 Corp.*, 2019 WL 5704137 (N.D. Ga. Nov. 4, 2019) ........... 23, 24

*Williams v. Sykes Enterprises, Inc., et al.*, Case No. 13-0946 (D. Minn. Oct. 3, 2013) ......................................................................................... 24

*Wlathour v. Chipio Windshield Repair, LLC*, 944 F. Supp. 2d 1267
  (N.D. Ga. 2013), aff'd, 745 F.3d 1326 (11th Cir. 2014) ..................................... 18

**Other Authorities**

29 CFR 785.19(a) .......................................................................................... 7

29 U.S.C. § 201 ............................................................................................. 1

29 U.S.C. § 207(a) ........................................................................................ 9

29 U.S.C. § 211(c) ........................................................................................ 9

29 U.S.C. § 216(b) ................................................................................. passim

29 U.S.C. § 255(a) ...................................................................................... 19

**Rules**

Fed. R. Civ. P. 20 ................................................................................... 13, 14

Fed. R. Civ. P. 20(a) ................................................................................... 13

Fed. R. Civ. P. 23 ....................................................................................... 18

Fed. R. Civ. P. 42(b) ................................................................................... 13

Fed. R. Civ. P. 42 ....................................................................................... 14

## I.   <u>INTRODUCTION/SUMMARY</u>

Plaintiff Brittany Phillips-Sims and putative Opt-in Plaintiff Desseria Johnson (collectively referred to herein as "Plaintiffs") were formerly employed by Defendant, Kaiser Foundation Health Plan of Georgia, Inc. (hereinafter "Defendant"), as hourly call center workers in the position of Customer Support Representatives (also referred to as "CSRs"). Defendant employs numerous call center workers in Georgia who are responsible for, among other things, responding to inbound telephone calls from Defendant's customers and assisting those customers with questions and concerns. Plaintiffs filed this case on July 1, 2019, seeking recovery for Defendant's willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  *See*, ECF No. 1.  Specifically, Plaintiffs challenge Defendant's company-wide policy and practice of failing to pay its CSRs for all time worked, including overtime wages at the rate of 150% of these employees' regular rates of pay for all time worked in excess of forty (40) hours per week.

Plaintiffs and the other CSRs are similarly situated as they are all subject to a company-wide policy and practice pursuant to which Defendant failed to pay them for approximately twenty-three (23) or more minutes of off-the-clock time worked per shift. Plaintiffs seek certification of the following FLSA collective

1

("Collective"):

> *All similarly situated current and former hourly Customer Support Representatives who work or have worked for Defendant at any time from July 1, 2016 through judgment.*

For the reasons set forth below, the Court should grant Plaintiffs' Motion and: 1) certify the proposed Collective under 29 U.S.C. § 216(b); 2) order Defendant to produce the full name, last known address, e-mail, and dates of employment, of all known Collective members within fourteen days; 3) approve issuance of the proposed notice form (*Exhibit A*) by first class mail and e-mail; and 4) approve the proposed opt-in period of sixty (60) days, with one reminder e-mail sent 40 days thereafter to anyone that did not opt-in.

## II.   RELEVANT FACTS

### A.   THE PARTIES

#### 1.   Defendant

Defendant Kaiser Foundation Health Plan of Georgia, Inc. ("Defendant"), is a Georgia corporation, with its principal place of business at 3495 Piedmont Road, 9 Piedmont Center, Atlanta, Georgia 30305.  ECF No. 1 at ¶ 24.

In order to serve its 12 million members, Defendant employs CSRs in a brick-and-mortar call center facility located in Duluth, Georgia.  ECF No. 1 at ¶ 6.  Upon information and belief, Defendant also employs CSRs from their home offices who

perform the same job duties and are subjected to the same legal violations as the CSRs working in Defendant's Duluth call center. *Id*.

### 2.  Plaintiffs

Named Plaintiff, Brittany Phillips Sims, is a resident of Riverdale, Georgia, who worked for Defendant as an hourly CSR at the Duluth, Georgia call center from November 2016 to May 2018. ECF No. 1 at ¶ 22.  Ms. Phillips Sims submitted a declaration in support of this Motion, which is attached as ***Exhibit B***.

Opt-in Plaintiff, Desseria Johnson, is also a resident of Riverdale, Georgia, who worked for Defendant as a CSR at the Duluth, Georgia call center from September 2006 to October 2017. Ms. Johnson submitted a declaration in support of this Motion, which is attached as ***Exhibit C***.

During their employment, both the Plaintiff and the Opt-in Plaintiff had the same job duties, received the same training, and used the same computer programs. *See generally*, ***Exhibits B-C***.

### B.  DEFENDANT MAINTAINS A POLICY AND PRACTICE OF FAILING TO PAY ITS CSRs FOR COMPENSABLE OFF-THE-CLOCK WORK

The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.

3

***Exhibit D***. One of those abuses, which occurred in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." (*Id.* at p. 2). The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities, stating "[a]n example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." (*Id.*).

Defendant's CSRs use multiple computer networks, software programs, and applications in the course of performing their job responsibilities. These networks, programs, and applications are an integral and important part of the CSRs' work, as they cannot perform their job without them. ECF No. 1 at ¶ 43. *See also*, ***Exhibits B-C*** at ¶¶ 7-11. Defendant's CSRs perform the same basic job duties and are required to use the same computer networks, software programs, applications, and phone systems. ECF No. 1 at ¶ 9. Defendant's CSRs are hourly, non-exempt employees. *Id.* at ¶ 89.

## 1.    Defendant Trains its CSRs to Work Off-the-Clock

Once their training begins, all CSRs are taught, *inter alia*, how to boot up and log into/out of Defendant's computer networks, programs, and applications. *Exhibits*

4

*B-C* at ¶ 7.  The CSRs are also taught the specific order in which to log in/out of the networks, programs, and applications. *Id*. at ¶ 13.  These boot up and login/out activities were performed off-the-clock, either before the CSRs clocked in at the beginning of the day or after they clocked out at the end of the day.  *Id*. at ¶¶ 9, 15. Additionally, Defendant required CSRs to return to their workstations and undertake the log-in processes before the end of their unpaid meal periods, in order to ensure they were prepared to take calls the moment their lunch period ended.  Consequently, CSRs were also forced to engage in off-the-clock work every day during their meal periods.  *Id*., ¶ 20.

### 2.   <u>Pre-Shift Work</u>

Pursuant to Defendant's policies, training, and direction, Plaintiffs (and all other CSRs) were required to start up and log into various secure computer programs, software programs, and applications in order to access information. ECF No. 1 at ¶ 39; *Exhibits B and C* at ¶ 7).  Specifically, before clocking in for each shift, Plaintiffs (and all other CSRs) are required to undertake the following essential work tasks in chronological order:

- Clock in at wall or at assigned desks(this was only for attendance purposes);

- Turn-on/restart assigned computer.

5

- Log-in to Cisco phone (if the CSR did not previously log in at wall;

- Log-on to Aspect Portal to check schedules for adherence with lunches and breaks;

- Log into Defendant's members' CRM portal to find members' insurance information;

- Log into ACI to process monthly premiums;

- Log into portal for Obama Care patients to process their payments;

- Log into Foundations, the legacy system for archived and new information;

- Log into KP.org to reset members' passwords for online portals;

- Log into Outlook for emailed messages;

- Log into Wiki for updates, training. and any company policy changes;

- Log into Sametime, Defendant's employee chat for sending and receiving information from team manager; and

- Finally, the CSRs clock into Defendant's timekeeping system via Cisco.  This step would allows CSRs to start taking calls and marks the first time CSRs began getting paid each shift.

ECF No. 1 at ¶ 40; *Exhibits B and C* at ¶ 8).

Defendant's CSRs complete the above steps before being clocked-in and paid each shift; meaning that they are performing off-the-clock work in a range of five (5) to ten (10) minutes per shift without compensation. ECF No. 1 at ¶ 47; *Exhibits*

*B and C* at ¶ 9. Consequently, Defendant maintains a common plan and policy pursuant to which it willfully fails to pay Plaintiffs and its other CSRs for off-the-clock work performed each and every shift in connection with their pre-shift startup and login activities. *Id*.

### 3. Meal-Period Off-the-Clock Work

The Declarations also illustrate Defendant's common, systemic and unlawful policy of failing to pay for all time worked during meal periods.  In order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

Instead of complying with the law, Defendant fails to provide a bona fide unpaid meal period because it requires Plaintiffs and the CSRs to return to their work stations prior to the end of their meal periods and then to spend off-the-clock time

logging back into the necessary computer/software programs and applications needed to begin taking calls promptly at the end of their scheduled meal periods. ECF No. 1 at ¶ 47; *Exhibits B and C* at ¶¶ 19-20.  The work performed by Plaintiffs and Defendant's CSRs during their unpaid meal periods takes substantial time on a daily basis with said time averaging approximately three (3) minutes per day, or more. ECF No. 1 at ¶ 48; *Exhibits B and C* at ¶¶ 20-21.

### 4.   <u>Post-Shift Work</u>

Pursuant to Defendant's policies, training and direction, Plaintiffs and all other CSRs are required to shut down and logout of certain computer programs and applications they use during their shift *after* they log-out of Defendant's timekeeping system. ECF No. 1 at ¶ 49; *Exhibits B and C* at ¶¶ 13-14.  The post-shift logout and shutdown process takes substantial time on a daily basis with said time being approximately five (5) minutes per shift, but can take longer if the CSR experiences technical problems with the computer/software/applications. ECF No. 1 at ¶ 49; *Exhibits B and C* at ¶ 14). Plaintiffs and the CSRs are not allowed begin the shutdown and log-out process until after their shifts end and after they clock out of Defendant's timekeeping system. ECF No. 1 at ¶ 50; *Exhibits B and C* at ¶¶ 14-15.

Additionally, Defendant maintains a practice and policy of requiring CSRs to shred and dispose of patient notes after they clocked out of Defendant's timekeeping

8

system. *Exhibits B and C* at ¶ 16. This resulted in additional off-the-clock work for which Plaintiffs and the CSRs were not compensated for at the end of their shifts. *Id*.

The unpaid off-the-clock work performed subsequent to each shift by Plaintiffs and other CSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs. ECF No. 1 at ¶ 52; *Exhibits B and C* at ¶ 18. Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay CSRs for no less than five (5) minutes per day of work performed in connection with their end of shift shutdown and log-out activities.

## III. <u>LAW AND ARGUMENT</u>

### A. <u>THE FLSA AUTHORIZES COLLECTIVE ACTIONS AND NOTICE TO SIMILARLY SITUATED EMPLOYEES</u>

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *See* 29 U.S.C. § 207(a). Compliance with this provision is obtained through the maintenance of *accurate* records of all hours worked by employees. 29 U.S.C. § 211(c).  An employer who

9

violates this requirement can be sued by the affected employee. 29 U.S.C. § 216(b).

Moreover, where the employer's violations are alleged to be widespread, the FLSA

affirmatively grants an aggrieved employee the right to bring an action "for and on

behalf of himself . . . and other employees similarly situated." *Id.*

This Court is authorized to send notice to potential class members in a

collective action, if the Court determines they are similarly situated to the Plaintiff.

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989); *Hipp v. Liberty*

*Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001).  As such, this pre-discovery

motion requests the circulation of a Notice of the pendency of this action to other

persons pursuant to § 216(b) so they can receive notice of, and exercise, their "opt

in" rights in this FLSA litigation.  Under the FLSA, until a person affirmatively "opts

in" by filing a written consent with the Court, the statute of limitations on their FLSA

claim continues to run. FLSA plaintiffs make an affirmative and conscious choice

to "opt in" and join the litigation—there are no "silent" FLSA participants whose

interests need to be protected by the Court. This is called a "collective action

certification for notice purposes." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544,

546 (6th Cir. 2006).  "The benefits of a collective action 'depend on employees

receiving accurate and timely notice … so that they can make informed decisions

about whether to participate.'" *Morgan v. Family Dollar Stores, Inc.* 551 F.3d 1233,

1259 (11th Cir. 2008) (*quoting Hoffman-La Roche*).

In *Hoffman-La-Roche*, the United States Supreme Court held that courts have the discretion to implement the collective action procedure by facilitating the issuance of notice to potential class members.[1]   493 U.S. 165, 173 (1989). Commenting favorably upon collective actions, the Supreme Court noted:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id*. at 170.

The lack of a class-wide tolling of the statute of limitations in FLSA cases should cause the Court to favor providing notice to other similarly situated persons of their "opt in" rights at the earliest stage of the litigation. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997). Failing to provide such prompt notice

---

[1] Although *Hoffman-LaRoche* is an Age Discrimination in Employment Act (ADEA) case, its analysis is applicable to FLSA cases because the ADEA explicitly incorporates the FLSA collective action provisions. *Mooney v. Aramco Servs. Co*, 54 F.3d 1207, 1212 (5th Cir. 1995); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997) ("[I]n Hoffman-LaRoche, the Supreme Court construed § 216(b) on its own terms, and its analysis applies with equal force to FLSA cases.").

11

frustrates the FLSA's broad remedial purposes and its specific grant of collective action rights to employees. *Fisher v. Michigan Bell Telephone Co.*, 665 F.Supp.2d 819, 828-29 (E.D. Mich. 2009); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

**B.    THE ELEVENTH CIRCUIT HAS CONSISTENTLY APPROVED THE USE OF THE "FAIRLY LENIENT STANDARD" WHEN DETERMINING WHETHER TO CONDITIONALLY CERTIFY A COLLECTIVE AND SEND NOTICE TO EMPLOYEES**

The majority approach to § 216(b) certification is the "two-stage class certification" that was originally set forth in *Lusardi v. Xerox Copy*, 118 F.R.D. 351 (D.N.J. 1987). The Eleventh Circuit applies the two-stage process to FLSA class certification. *See Hipp*, 252 F.3d at 1218 (11th Cir. 2001); *Cameron-Grant v. Maxim Healthcare Servs. Inc.,* 347 F.3d 1240, 1243 n. 2 (11th Cir. 2003) ("Since *Hipp,* the district courts in our circuit have utilized the two-tiered approach."); and *Morgan*, 551 F.3d 1233, 1260 (11th Cir. 2008) ("While not requiring a rigid process for determining similarity, we have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase.").

**1.    Stage One**

The first stage requires a court to determine, before discovery, whether other similarly situated employees should be notified of the pending case (i.e., the "notice

stage").[2]  Because the conditional certification decision is generally made prior to

discovery, the plaintiff's evidentiary burden at this stage is not a heavy one. *See*

*Morgan*, 551 F.3d 1233, 1260-61 (11th Cir. 2008) (quoting cases in which the

notice-stage standard was described as "not particularly stringent," "fairly lenient,"

"not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate

trials under 42(b)") [internal citations omitted]. Because the court has minimal

evidence during the conditional certification stage, the "determination is made using

a fairly lenient standard, and typically results in 'conditional certification' of a

representative class." *Jackson v. Fannie Mae*, 2016 U.S. Dist. LEXIS 70305, *13

(N.D. Ga. Mar. 29, 2016) (*citing Hipp*, 252 F.3d at 1218).[3]

---

[2] *See Ide v. Neighborhood Rest. Partners, LLC*, Case No. 13-cv-509 (N.D. Ga.) (J. Cohen) (Dkt. 68, p. 10 n.4) ("conditional certification is generally determined before the discovery period . . .").

[3] This District Court has often granted FLSA conditional certification under the fairly lenient standard of review. *See e.g. Stelmachers v. Maxim Healthcare Servs*., 2013 U.S. Dist. LEXIS 189876, *7 (N.D. Ga. Aug. 5, 2013) ("plaintiffs have satisfied the minimal burden of showing they are similarly situated to the other potential opt-in plaintiffs."); *Reece v. United Home Care of N. Atlanta, Inc.*, 2013 U.S. Dist. LEXIS 31995, *10 (N.D. Ga. Mar. 7, 2013) ("Plaintiff has put forth sufficient evidence of similarity between her, the opt-ins and the putative class to satisfy the lenient standard for conditional certification."); *Scott v. Heartland Home Finance*, 2006 U.S. Dist. LEXIS, *11 (N.D. Ga. May 3, 2006) (declining to resolve factual issues or make credibility determinations at the notice stage); *Kreher v. City of Atlanta, Ga.,* 2006 U.S. Dist. LEXIS, *18 (N.D. Ga. Mar. 20, 2006) ("a court adjudicating a motion to authorize a collective action need not evaluate the merits of plaintiffs' claims in order to determine whether a similarly situated group exists.").

To proceed collectively, and prior to a court authorizing notice to absent class members, the FLSA requires the identification of a group of "similarly situated" employees. *See* 29 U.S.C. § 216(b); *Grayson v. Kmart Corp*, 79 F.3d 1086, 1096 (11th Cir. 1996). The meaning of "similarly situated" is not defined in the FLSA, and the Eleventh Circuit has given courts only general guidance stating that the similarly situated requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Id.* at 1095.

### (a)     Burden of Proof and Evidence Typically Accepted to Meet the "Similarly Situated" Standard

Before authorizing notice, this Court should determine: (1) whether employees sought to be included in the putative class are similarly situated with respect to their job requirements and pay provisions; and (2) whether there are other employees who wish to opt-in to the action. *Dybach v. Florida Dep't of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991). The focus of the Court's inquiry at this stage is not on whether there has been an actual violation of law, but on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated. *Kreher v. City of Atlanta, Ga.,* 2006 U.S. Dist. LEXIS 23094, *16-17 (N.D. Ga.) (holding that plaintiffs are not required to submit evidence of a highly particularized nature and finding that "[a]lthough lacking in some detail,

14

Plaintiffs' declarations establish the existence of other employees employed in similar positions and subjected to similar policies."). The Court generally "makes a decision based on limited information, such as detailed pleadings and affidavits, whether notice of the action should be given to potential class members." *Jewell v. Aaron's, Inc.*, 2012 U.S. Dist. LEXIS 92285, *6-7 (N.D. Ga. June 28, 2012) (*citing Hipp,* 252 F.3d at 1218).[4]

Moreover, applying the fairly lenient standard of the notice/conditional certification stage, plaintiffs are not required to show that they hold identical positions. *Hipp,* 252 F.3d at 1217; *Grayson,* 79 F.3d at 1096. Rather, for purposes of conditional certification, plaintiffs may show *either* (1) that their job positions and duties are similar to those positions held by the putative class members, *see Hipp,* 252 F.3d at 1217; *Grayson,* 79 F.3d at 1096, *or* (2) that plaintiffs and the putative class members were all subject to the same unified policy, plan, or scheme that forms

---

[4] *See also Carmody v. Fla. Ctr. for Recovery, Inc.*, 2006 U.S. Dist. LEXIS 81640, *9 (S.D. Fla. Nov. 7, 2006) ("Hence, the Court will look to the filings, declarations, and affidavits on record to determine whether there are substantial allegations showing that the named Plaintiffs are similarly situated to the putative class members."); *Bell v. Mynt Entertainment, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (plaintiffs meet their burden by making substantial allegations supported by affidavits which successfully engage defendant's affidavits to the contrary, and demonstrate the existence of similarly situated employees who may desire to opt in to the action).

the basis of the alleged FLSA violation, *see, e.g., Morgan,* 551 F.3d at 1262–63 (upholding district court's denial of employer's motion to decertify and finding that "there is nothing unfair about litigating a single corporate decision in a single collective action"); *Scott v. Heartland Home Finance, Inc.,* 2006 WL 1209813, *2 (N.D. Ga.) (holding that the notice stage requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."); *Hill v. Muscogee County Sch. Dist.,* 2005 WL 3526669, *2 (M.D. Ga.) ("to show that they are similarly situated, plaintiffs may present allegations and evidence to show that defendant engaged in a unified policy, plan, or scheme of FLSA violations").

Here, Plaintiffs easily meet their burden of proof under the lenient conditional certification standard. As explained herein, Plaintiffs' Complaint and their declarations submitted with this memorandum, satisfy the requisite burden of proof to certify a collective action and approve notice.[5]  Without notice, one other CSR

---

[5] Plaintiffs note that, in making the determination of whether a group of similarly situated individuals exists, courts do **not** evaluate the merits of the plaintiffs' claims. *See Jewell,* 2012 U.S. Dist. LEXIS 92285 at *18 ("At the notice/conditional certification stage, the Court does not determine the legality of Defendant's practice or evaluate the merits of the plaintiff's claim…"); *Riddle,* 2009 U.S. Dist. LEXIS 89955 at *7 (finding that "variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at this stage ."); *Hipp,* 252 F.3d at 1219 (finding that the fact that the

16

has already requested to join this case and provided a declaration which sufficiently establishes that each of the putative opt-in plaintiffs are "similarly situated" to the named Plaintiffs, that they all have similar (if not identical) job duties and pay, and that they believe other CSRs would join the case should they receive notice. The declarations are also sufficient to show that Defendant employs uniform and company-wide pay practices with respect to all CSRs who work or worked for Defendant, regardless of each person's training, location, or rate of pay. *See Exhibits B-C*.

Accordingly, Plaintiffs meet their lenient burden of proof and this Court should authorize issuance of the accompanying proposed form of notice (*Exhibit A*) to all CSRs who worked for Defendant at any time during the past three years.

**(b)     Remedial Purpose of FLSA**

In light of the FLSA's remedial purpose, courts have repeatedly held that the similarly situated requirement of § 216(b) must be interpreted generously to permit workers to collectively pursue their FLSA claims. *See, e.g., Hipp*, 252 F.3d at 1214

---

plaintiffs all worked in different geographical locations was not conclusive of whether they are similarly situated during first stage of analysis); *Kreher*, 2006 U.S. Dist. LEXIS 23094 at *16-18 n. 8 & 9 (issues of individualized nature of employees' claims, although potentially meritorious, should be considered during second stage of analysis).

(11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]");  *Wlathour v. Chipio Windshield Repair, LLC*, 944 F. Supp. 2d 1267, 1277 (N.D. Ga. 2013), aff'd, 745 F.3d 1326 (11th Cir. 2014) ("employing a rigorous analysis for determining class certification under Fed. R. Civ. P. 23, is inapplicable to a district court's determination of whether to provide notice to a conditional class of opt-in plaintiffs under 28 U.S.C. § 216(b) that will be re-examined once discovery and the record are more complete.") (*internal quotations omitted*); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (imposition of a rigorous inquiry would undermine "the importance of early judicial management to assure efficient resolution of similar claims."); *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) (rigorous inquiry into § 216(b)'s similarly situated requirement "would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the antidiscrimination provisions of the FLSA.") (*quoting Hoffman-LaRoche*, 493 U.S. at 173).  The court in *Jackson v. New York Tel. Co.*, *supra*, stated that a rigorous inquiry at such an early juncture would be excessive in the context of a remedial statute, and would be contrary to "the importance of early judicial management to assure efficient resolution of similar claims." *Id*. at 431.

18

### (c)     The Purpose of § 216(b) Notice is to Protect Employees' Statute of Limitations

"To further the Congressional policy that plaintiffs be allowed to proceed collectively under Section 216(b), a district court has the authority and discretion to issue an order permitting a plaintiff to send notice of opt-in rights to potential members of the class."  *Kreher*, 2006 U.S. Dist. LEXIS 23094 at *22 (*citing Grayson,* 79 F.3d at 1096).  As the court stated in *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988), *aff'd*, 862 F.2d 439 (2d Cir.), *aff'd*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989):

> [N]otice to absent class members need not await a conclusive finding of similar situations. To impose such a requirement would condemn any large class claim . . . to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves.

The court concluded that allowing notice to be sent prior to a final decision on the similarly situated element would assure that the decision made after absent members had opted-in would be "informed, efficiently reached, and conclusive." *Id*.

Further, the FLSA statute of limitations is only two years, and extended to three for a willful violation. 29 U.S.C. § 255(a). If notice is not issued early in a case, a great number of employees will lose their claims due to nothing more than the

19

passage of time. District courts recognize the great prejudice that befalls employees when notice of a collective action is not issued in a timely fashion. *See LaFleur v. Dollar Tree Stores, Inc.*, 2012 U.S. Dist. LEXIS at *10-11 (E.D. Va. Oct. 2, 2012) ("Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action . . . courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding").

When courts delay in determining whether to authorize notice, numerous FLSA violations may persist without redress due to nothing more than the running statute of limitations. Indeed, defendant employers could easily eliminate all FLSA exposure by simply running out the clock. Conversely, employees who lack meritorious claims or who are not ultimately found to be "similarly situated" to the named plaintiffs in a given case receive no advantage from early court-authorized notice. These employees still must prove their case on the merits, and they still must withstand a stage-two decertification analysis in order to proceed in the collective action. In sum, the only plausible purpose for delaying early notice is to foreclose the vindication of valid claims under the FLSA.

## 2. **Stage Two**

The second stage of certification process is "typically precipitated by a motion

for 'decertification' by the defendant usually filed after discovery" and the matter is ready for trial. *Hipp*, 252 F.3d at 1218; *Morgan*, 551 F.3d at 1260.  At the second stage, the standard is less lenient on the plaintiffs. The district court "has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity." *Morgan*, 551 F.3d at 1261.

## C.   THIS COURT SHOULD PROMPTLY AUTHORIZE NOTICE TO POTENTIAL OPT-IN PLAINTIFFS

Here, Plaintiffs easily meet the burden for conditional certification under § 216(b) of the FLSA. In addition to their detailed Complaint, Plaintiffs have submitted detailed declarations outlining the specific off-the-clock work Defendant required of its CSRs without pay. The declarations establish that Defendant employs uniform and company-wide pay practices with respect to CSRs. The declarations demonstrate the pre-, mid-, and post-shift time is significant, is required to perform Plaintiffs' job, and is not *de minimis.* The declarations show Defendant violates the law by refusing to pay its hourly customer service representatives for this time, including overtime.  (*See generally*, ***Exhibits B-C***.)

Plaintiffs' declarations also state that, based on their personal experience and familiarity with other CSRs, there are many other CSRs who were subjected the same practices, worked off-the-clock and overtime for which they were not paid,

and would likely participate in a lawsuit to recover unpaid wages. (*Id.* at ¶¶ 26-28.) Issuing the proposed notice will promote an efficient prosecution of opt-in plaintiff cases for the Court and parties. Specifically, issuing notice early in this case will fulfill the purpose of §216(b) by affording other CSRs employed by Defendant to learn of their rights, become aware of this case and, if they chose, to exercise their opt-in rights and file a consent to join this lawsuit before the statute of limitations expires any further. Accordingly, this Court should authorize issuance of the accompanying proposed form of notice to all CSRs who worked for Defendant during the class period.

### D.   PLAINTIFFS SHOULD BE PERMITTED TO OBTAIN A LIST OF ALL POTENTIAL CLASS MEMBERS AND SEND NOTICE

In order to facilitate timely and orderly notice to all similarly situated employees, Plaintiffs also request that the Court order Defendant, within 14 days of the entry of the order granting this Motion, to identify all CSRs who worked for Defendant within the past three years (i.e., identifying each person by full name, last known address, e-mail, dates of employment, and location(s) of employment). Plaintiffs will then cause the notice to issue to those individuals via first-class mail and e-mail.

### 1.   Notice via E-mail

In addition to first-class mail, numerous courts recognize it is appropriate to distribute notice by way of e-mail. *See e.g.*, *Kiley v. MedFirst Consulting Healthcare Staffing, LLC*, 297 F. Supp. 3d 1260, 1267 (N.D. Ala. 2018) ("Given Plaintiffs' evidence of transiency, and given that persons employed in such positions are more inclined to receive written communications via electronic (as opposed to U.S.) mail, notice by e-mail and direct mail is warranted here to protect judicial economy and avoid the added step of resending notices."); *Weinstein v. 440 Corp.*, 2019 WL 5704137, at *7 (N.D. Ga. Nov. 4, 2019) (holding "Plaintiff's counsel may also sent the Emailed Notice Form to the putative Collective Members by email and Facebook."); *Alequin v. Darden Restaurants, Inc.*, 2013 WL 3945919, at *2 (S.D. Fla. July 31, 2013) (Listing cases and holding "Plaintiffs are correct in noting that courts in this Circuit commonly approve email notice to potential opt-in class members in FLSA cases."); *Atkinson v. TeleTech Holdings, Inc.*, 2015 U.S. Dist. LEXIS 23630, *11 (W.D. Ohio February 26, 2015) (approving e-mail notice to call center employees and observing that it "appears to be in line with the current nationwide trend"); *Palma v. Metropcs Wireless, Inc.*, 2014 WL 235478 (M.D. Fla. Jan. 22, 2014) (*citing Stuven v. Texas De Brazil (Tampa) Corp.*, 2013 U.S. Dist. LEXIS 22240 at *17 (M.D. Fla. Feb. 19, 2013); *Cooper v. E. Coast Assemblers, Inc.*, 2013 U.S. Dist. LEXIS 10435 at *11 (S.D. Fla. Jan. 25, 2013) ("Plaintiff's counsel

23

may e-mail the Notice in addition to its mailing."); *Ross v. Jack Rabbit Servs., Inc.*, 2014 U.S. Dist. LEXIS 72550 at *13-14 (W.D. Ky. May 29, 2014) (ordering the production of e-mails "for the purpose of notifying potential plaintiffs in this action"); *Williams v. Sykes Enterprises, Inc., et al.*, Case No. 13-0946 (D. Minn. Oct. 3, 2013) (finding that, "in this day and age, the potential class members [call center employees] should be allowed to opt-in electronically."); *Phelps v. MC Commc'ns, Inc.*, 2011 U.S. Dist. LEXIS 84428 at *17 (D. Nev. Aug. 1, 2011) ("The Court will permit Plaintiffs to e-mail the notice to those employees for whom Defendants have e-mail addresses, as well as send it by first class mail. E-mail is an efficient, reasonable, and low cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees.").

## 2. **Reminder Notice**

Plaintiffs also request that the Court allow them, thirty (30) days after sending the initial notice, to send a reminder notice via e-mail to the potential opt-ins reminding them about the opt-in deadline. Courts across the country have authorized reminder notices in FLSA collective actions. *Weinstein v. 440 Corp.*, 2019 WL 5704137, at *7 (N.D. Ga. Nov. 4, 2019) (holding "Plaintiff's counsel shall send one reminder notice to the putative Collective members who have not responded); *Miller v. FleetCor Techs. Operating Co., LLC.*, 2014 WL 12543337, at *6 (N.D. Ga. Apr.

8, 2014) (holding "Plaintiff will be allowed to send both initial and 'reminder' court-approved notices to any members of the Stipulated Collective that have not already received written notification of this action.").[6]

### E.   THE COURT SHOULD GRANT A SIXTY (60) DAY OPT-IN PERIOD FOR EMPLOYEES TO JOIN THIS LITIGATION

With respect to the length of the opt-in period, Plaintiffs anticipate significant difficulties in locating potential opt-in plaintiffs, noting that, due to employee demographics and the substantial employee turnover rate in Defendant's industry, the potential opt-in plaintiffs who are no longer employed by Defendant may be difficult to reach and may have relocated to a different address. Under the circumstances, Plaintiffs argue the Court should allow for an opt-in period of at least sixty (60) days, which is standard in this District.  *See*, *Florence v. Deli Mgmt., Inc.*, 2019 WL 964316, at *4 (N.D. Ga. Jan. 10, 2019) ("the Court approves a sixty-day opt-in period with one reminder notice sent at the thirty-day mark."); *Stevenson v. Great Am. Dream, Inc.*, 2013 WL 4217128, at *3 (N.D. Ga. Aug. 14, 2013) ("Plaintiffs' proposed notice, including the 60-day opt-in period, is consistent in all

---

[6] Examples of other Courts approving reminder notice include: *Burrell v. Toppers Int'l, Inc.*, 2016 U.S. Dist. LEXIS 31268 (M.D. Ga. Mar. 11, 2016); *Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2014 WL 5358723 (N.D. Cal. Oct. 20, 2014); *Jennings v. Cellco P'ship*, 2012 WL 2568146 (D. Minn. July 2, 2012); *Hargrove v. Ryla Teleservs., Inc.*, 2012 WL 463442 (E.D. Va. Feb. 13, 2012).

material respects with notice that have been approved in other cases.").

## IV.   <u>CONCLUSION</u>

For the reasons explained above, Plaintiffs respectfully request that the Court,

pursuant to the FLSA, 29 U.S.C. § 216(b), enter an order:

(1)   Conditionally certifying the proposed FLSA collective;

(2)   Implementing a procedure whereby Court-authorized notice of Plaintiffs' FLSA claim is sent (via US Mail and e-mail) to:

*All similarly situated current and former hourly Customer Support Representatives who work or have worked for Defendant at any time from July 1, 2016 through judgment*; and

(3)   Requiring Defendant to identify all potential opt-in plaintiffs by providing their full name, last known address, e-mail, work location(s) and dates of employment in an agreeable format for distributing within 14 days of the entry of the order.

Dated:  January 23, 2020

*s/ Kevin J. Stoops*
Kevin J. Stoops *(PHV)*
MI Bar No. P72614
Charles R. Ash, IV *(PHV Forthcoming)*
MI Bar No. P73877
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
crash@sommersp.com

*Trial Counsel for Plaintiff*

26

*s/ Steven E. Wolfe*_____
Steven E. Wolfe, GA Bar No. 142441
LEGARE, ATTWOOD & WOLFE, LLC
125 Clairemont Avenue, Suite 380
Decatur, GA 30030
Tel: (470) 823-4000
sewolfe@law-llc.com

*Local Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on January 23, 2020, I electronically filed the forgoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*s/ Kevin J. Stoops*____
Kevin J. Stoops *(PHV)*
MI Bar No. P72614
SOMMERS SCHWARTZ, P.C.

27